May it please the Court. In this case, Defendant Vega-Ruiz asked the Court to apply legal rules set out in three cases, United States v. Henry, Llerena Magana, and Vargas Garcia. In applying those rules, the Court should hold that Vega-Ruiz's conduct in carrying marijuana across the border from Mexico into the United States illegally is conduct that's part of the instant offense of illegal reentry. And that's because he committed the offense of carrying marijuana illegally across the border in the very same set of acts when he committed the offense of bringing himself illegally across the border, violating the integrity of the border through the same set of acts committed at the same time, same place, by the same person, through the same constant set of actions that he put into place. I have a question about the ramifications of your argument. I know here he was only charged federally with the immigration case. If he'd been charged federally with the drugs, bringing the drugs into the country, and the immigration reentry, or the immigration charge, would, under your theory that they're relevant conduct, would that mean that his immigration sentencing guideline would be grouped with the drug guideline and be increased? Not necessarily, because the grouping rules have completely different sets of rules, and there are some offenses that just by rule are specifically excluded from being grouped together. And I believe immigration and drug offenses fall within that specific type of exclusion. So it's not necessarily that they would all be rolled together and that he wouldn't get a bump if they were prosecuted together at the same time. In this case, we've recognized that we're on plain error review. And so that plain error comes in three different sources. One is the language of the guidelines themselves. Two is the case law that I've just cited to the court. And three is the set of facts that's set out in the four corners of the PSR itself. So first to the guidelines. The guideline that we're dealing with is Section 4A1.2A1, which says that a prior sentence gets criminal history points unless the conduct, not the offense, but the conduct for that prior sentence is part of the instant offense. And I emphasize conduct here because the government has argued drawing on cases from outside the circuit, primarily the Eighth Circuit, that the court should look to criteria such as whether the offense, the state offense that we're arguing about, was somehow charged as part of the federal offense, or whether it was used to charge federal offense. But that sort of offense-based focus is nowhere to be found in the guideline itself. It was a set of criteria that the Eighth Circuit, as well as this circuit and other circuits, delineated prior to 1993, prior to an amendment to the guideline. The Eighth Circuit has continued to use it, but it's not been used by this court since. And the guideline itself— Well, aside from all of that, and you can make that argument well enough, but this case is under plain error review. Yes, Your Honor. And the error had to be plain to the district court. Yes, Your Honor. And if it was so plain, I don't know why we are arguing so intensely about it here on the Fifth Circuit. And second, it seems to me that it involves a factual issue in which we have held that issues of fact can never be the basis of plain error. So it just—although you may have a very good argument if this were not in the plain error, it seems to me that plain error basically makes any argument that you make futile. I would agree that it makes it more difficult, Your Honor, but first in terms of the legal plainness of it. That legal plainness comes from the two first sources I mentioned, the guideline language itself, but also this court's case law. And I think some of the confusion in that comes from the fact that people often look for the exact fact pattern. We look for an illegal reentry case where a court has held in those circumstances that the two cases should be combined. And that's really too narrow of a focus. In the two cases we have here, Urena Magana and Vargas Garcia, those were illegal reentry cases. They did come out against the defendant, but they came out against the defendant because the defendant didn't have what Vega Ruiz has in his case. But the court set out the rules in that case. The third case, Henry, was a case that came out in the defendant's favor. And it came out in his favor because the court applied the same rules that I'm asking the court to apply here. So I think there's just some confusion sometimes in terms of how the rules apply when you're looking for very specific fact situations instead of looking at the rules. Let me ask you this hypothetical. If an individual, alien, crossed the border and robbed a bank, would his illegal entry, the crime of illegal entry, and the crime of robbing the bank be associated and considered as a simultaneous crime? No, Your Honor. And it wouldn't be based on these same rules that I'm talking about here. And that's because in these two cases I just mentioned, you looked for three things. You looked for temporal proximity, spatial proximity, and you looked for the same societal harm that was being harmed. So the difference here in Vega Ruiz's case is that he didn't cross the border and then later rob a bank or later do a drug crime. He crossed the border as established in the PSR on July 24, 2017. I'm talking about, in other words, the first information that the government had that he had crossed the border was at the time they arrested him for robbing the bank. And they charge him both with illegal entry and they charge him with robbing the bank. Those two are different crimes and they would serve the purpose of enhancing the summits, you're saying. Those are separate crimes. And I think what I would focus on, if I were arguing in that case, would be both temporal and spatial. Temporal, it's the same thing. In other words, it happened at the same time. As far as the government is concerned, spatial at the same time, said the bank is right on the border. The difference would be that in this case, Vargas Garcia, in the very act of crossing the border illegally, in the very act of commencing his illegal reentry offense, he had that marijuana on his back and was doing it all at the same time. We know, we think that. We don't know that. Well, we know it from the PSR in the sense that the PSR in various locations, and that's getting to your other concern, Your Honor, about is this a fact question. And even the government in their brief says nobody disputes the facts in the PSR. And so that's where I'm bringing this from, paragraphs four and six, plus the description of the offense in the criminal history paragraph. But the key is that he has to possess it on one side of the border and possess it as he crosses and then, of course, possess it once he arrives in Laredo or wherever. Yes. And as to going to that fact, that fact was admitted at the sentencing hearing. It was part of an evidentiary admission that counsel made. I don't think he understood the import of what he was saying, but counsel described the facts to the court and nobody protested, nobody objected, nobody said that's not true. It was an evidentiary admission he made that this defendant put the backpack on in order to cross the border so he could pay his fee to get across, so he could make the illegal reentry. How do you get around the indictment, which your client pled to, which charges being found in the United States, not on the date he actually came across the border, but later, I think when he gets released from state jail? Well, I think that argument that the government's made, that we're stuck with the date admitted in the indictment, is a legal error under this court's analysis from more than 20 years ago now, because in the case we cite, Santana-Castellano, and in the subsequent cases like Coro-Balbueno, Alvarado-Santillano, this court has consistently said that the illegal reentry offense begins the moment that person crosses the border and it continues until he's found. So it began on the date that he crossed that border, which he admitted, as said in the PSR, which he admitted was that very same day of July 24th. This court's precedent under Gunara from 2007 also establishes, as do the previous cases. There's a difference in the date of the offense and the date of the arrest. Exactly. And the offense both began and ended on July 24th in this case, because CBP agents, who are immigration agents by their own presentation on the website that we cited the court to by their own mission statement saying what they're there for, they found him on July 24th, right there at the border. They found him right beside the marijuana. He admitted on that date, per the PSR, that he had come in here illegally. And on that very date, when the federal authorities decided not to prosecute him for the marijuana offense, they placed a detainer on him. Why in the timing here, under the statute, is found in the United States? Yes, Your Honor. The date that he was found. It's July 24th, 2017, because that's the day the CBP agents, who are immigration agents, that's part of the Department of Homeland Security, part of their mission. He was found on that date under this court's law, because this court in Santana-Castellano said the defendant's offense ends when the illegality of his presence is noted by immigration authorities. And that all happened on July 24th. Yes, the indictment said on or about some date in October or November, when some other agent re-interviewed him again, but it's an on or about statement. It was a statement that he could admit to, because certainly July and November were close enough in terms of on or about. And again, I admit this is a plain error case. I don't know that people were really thinking of the consequences of what they were saying at the time. But it certainly wouldn't make him innocent of the offense if he had gone to trial to say, well, I was found in July, not November, when the instruction would be on or about. So he committed the offense. He committed it at the same time. All those facts are in the PSR and at his evidentiary admission at the sentencing itself. And what makes this case very similar to Henry, which is the one positive case that we've cited to, is that it's really the unity of time and place and action that was the same as in Henry. In that case, the man committed a state offense by trespassing on his girlfriend's home, entering her home. At the same time, he was subject to a restraining order, and it turns out he had a gun. So two separate, completely separate offenses. But this Court accepted that because both of those two separate offenses, neither one of which was necessary to prove the other, they were committed at the same time in the same place by the same individual in the same set of actions, all as a unity. And that's what I'm arguing here, that Vega Ruiz crossed the border with that marijuana, as he admitted. He crossed the border to illegally reenter himself, all at the same time in the same place. That should have been plain to the district judge. It should have been. Honestly, it should have been plain to everybody if we had paid attention to what Urena Magana and Vargas Garcia really say. They didn't say that a criminal offense is never part of an illegal reentry offense. They said, look at when this person committed his state offense. In Vargas Garcia, for example, he committed that offense in Dallas, Texas. There was no evidence about when he had reentered the country. Although you're saying that, in other words, for this error to have been plain for the district judge, he would have had to parse these other cases and slice them thin like you're doing. Not necessarily, Your Honor. I think it's just noticing what the rule is as opposed to the result. If you look at the legal principles instead of the result, it's clear. And Henry, I think, makes it very clear because that's a case this Court decided in favor of the defendant. If you look at the three factors, time, temporal proximity, spatial proximity, those were missing in Vargas Garcia and Urena Magana. Urena Magana, the guy was found near the border, Edinburgh, Texas, but they found him with his drug offense a month after they could prove he had already entered the United States illegally. It's not what you've got here. So, yes, it is a difference, but it's very similar to Henry. Henry was cited in those other cases. So all the rules have been set out clearly before in this Court's case law. All the rules are there right in the guidelines themselves, and all the facts are right there in the PSR for the most part with the one evidentiary admission that he made at sentencing, which was I crossed the border with the marijuana right then. You're right. That was something that was otherwise inferred because they found him at the border right near the Brownsville landfill, which any commercially available map shows is within a mile to two miles of the border, and they found him with the marijuana right beside him. So, yes, that is an inference, but his admission at sentencing is what brought those two things together. The other issue I would like to address is societal harm because that was the third factor. And, yes, one of these offenses is an immigration offense. The other is a drug offense. But, again, the context of the border gives this a very specific societal harm, and I locate that harm, again, in what Customs and Border Protection identifies as being its own reason for being. They identify themselves as an agency that is there to protect the border, both from illegal incursion of substances or agricultural products, to protect the border from those illegal incursions by things, but also to protect the border, as is the name Border Patrol, from the incursion of people. So, in this case, because of that very close nexus to the border, what you had is a societal harm in what Figueres Ruiz did of the violation of the border. He did it in two different ways, but it was the same societal harm, violating the border by crossing illegally with drugs, violating the border by crossing illegally with himself in his own illegal presence, and it was that societal interest defined in what CBP means and what it does in its mission statement that shows that it was the same societal harm, same temporal proximity, same spatial proximity as well. So, for all of these reasons, this error was clear and obvious, or should have been clear and obvious, based on the court's law, the guideline, the facts set out there. The government hasn't argued at all that we haven't met the third or the fourth prong, but just briefly, the difference from the top of the right guideline range to the bottom of the wrong guideline range is a difference of nine months, almost a third of the sentence that was actually imposed. So, under Molina-Martinez, that's sufficient to meet that burden of showing an effect on substantial rights. And under Rosales-Mireles, this is a case that the court should correct, that it should remand for the district court to reconsider the sentence, one, because of the degree of that difference, and two, because the district court didn't identify any other countervailing factors to say that the court would have done the same thing otherwise. We acknowledge that the court might decide to do something totally different once the court knows what the correct guideline range is. The court might impose a variance, but that's for the district court to do in the first instance. Your client's release date? I don't know his exact release date. I believe the two-year mark will be in about October of this year. So, he got a 30-month sentence, so taking into account good time credit, it should be somewhere around October of 2019. All right. Thank you, counsel. Thank you, Your Honor. We'll go from the government. May it please the Court. Loretta Berry for the United States. I want to emphasize right off, Your Honors, that Vega does not challenge his illegal reentry conviction on appeal. The indictment for his illegal reentry conviction charged a specific founding date of November 21, 2017. That's at Record 12. And he confirmed three times in open court during rearrangement that the operative controlling date was November 21, 2017. He confirmed it when the prosecutor read the indictment. He confirmed it when the prosecutor read the factual basis. And he confirmed it when the district court said, asked him about it, and used the date of November 21, not on or about, actually said November 21. But what if what he confirmed was not supported by the record? In other words, he didn't understand the nuances that were implicated in dates. Well, Your Honor, he should have raised that at the time of his rearrangement. He should have challenged that below. That was never challenged below, and it's not challenged on appeal. I understand that, but I'm just saying holding him to or saying that we cannot further consider a change of the date itself when we're confronted with the fact. Well, the reason why that's important, Your Honor, is that for the first time on appeal, he's asking this court to use a different founding date for sentencing purposes only. What is the founding date? The founding date that he is tied to legally as a matter of law is November 21, 2017. But we don't ignore reality. I mean, he wasn't – I think his point is he wasn't parachuted into the country that day. He had to come across the border, and we know when that was. Right, and in a metaphysical, technical sense, as this court held in Urena, the July 24 date is the right date. That was not – The government doesn't dispute that at the time he crossed. He was in possession in the backpack. He was in possession of marijuana. I don't know what the backpack – I didn't see that in the record, Your Honor. But in terms of let's just assume that July 24 was alleged in the indictment, it doesn't matter because there's no evidence in this record under plain error review that the prior sentence for the drugs was relevant conduct to the illegal reentry offense. This is a purely fact question that was never raised by the federal public defender below. And as this court acknowledges in Lopez for almost 30 years – But, yes, I mean, maybe it is relevant in terms of plain error because, I mean, what was before the judge was what was before the judge. And if he – that would be the date that we would judge his decision by perhaps. I don't know. What was before the judge was absolutely no evidence. It was a simple statement by the federal public defender. It was not evidence. The federal public defender – the sum total of the evidence was this statement at record page 93. The federal public defender stated, in crossing the river, basically, since he did not have money for the fee, he was asked to go with a group of people, but they had bundles of marijuana. When he was arrested, he did not have the marijuana with him. He was arrested. The marijuana was near him himself. That's a pretty ambiguous statement, Your Honor, and that's all we have in this record. That wasn't evidence. Yeah, and it does seem like there's no association. It does seem like that presents to the district court a factual determination if he's going to determine that they're simultaneous crimes because he has said he did not have the marijuana with him. Is that what you're saying? Honestly, the only statement we have in the record, Your Honor, is that one statement. He said he didn't have the marijuana with him. I don't really know what that means. It wasn't elaborated on. He was charged in the state court and found guilty, I think, with a probation sentence. Yes. I mean, that's a public record, a state court conviction. Yes. So, I mean, I don't see that there's really a dispute that he was bringing drugs into the country. Otherwise, how does the state conviction stand? Well, the state conviction stands. He did bring drugs into the country. But as far as the precise, distinct argument that must be presented to the district court for us to review, for this court to review, those arguments for a 1.2A1 as to relevant conduct were never made. It's a very discreet argument that must be made. And I want to emphasize that the Urena case and the Vargas case are very important because this court looked at the defendant's argument where the defendant argued that the temporal element was dispositive because, for instance, in Vargas, which was a plain error case, the defendant argued that his resisting arrest offense was relevant conduct to the illegal reentry. He argued that because he said that he was resisting arrest because he didn't want to be ‑‑ he wanted to avoid detection for illegal reentry. So the defendant's whole argument was the temporal proximity of the two, which is what we have here today that the defendant is arguing. But this court in Vargas under plain error review rejected that argument and said the two offenses were distinct offenses. They involved different criminal conduct. And two years later in Urena, this court held under the exact flip of the facts we have here. The defendant there argued that his illegal reentry offense, his prior illegal reentry sentence, excuse me, was relevant conduct to the drug offense. And this court held, again, that there was no evidence in the record that one offense was in preparation for the other, that one offense was during the commission of the other. The court specifically held in Urena that the temporal proximity element, it's not solely dispositive. Yes, it's important, but it doesn't give a defendant carte blanche to commit every contemporaneous crime and have it be considered relevant conduct. The court in Urena also distinguished the Henry case, which the federal public defender relies upon. And I just want to touch on the fact that Henry was a government concession, and in Urena this court distinguished it because, number one, it wasn't an illegal reentry case, and, number two, it was a trespass case where the defendant actually used the firearm to commit the trespass offense, and the government agreed there was a clear link between the two. Under Urena, this court has also looked at the Sixth and Eighth Circuit cases where those courts looked at other elements, again, besides simply the temporal element. They're such as the prosecution by different sovereigns with different facts. We have that here. The fact that the federal indictment does not reference anything in the state offense or the state facts. There's different societal interests. We have the drug offense protecting society from the drugs versus respect for immigration laws. And, again, the court noted that the illegal reentry offense does not give the defendant carte blanche to merge all of the conduct that occurs in a single time span. If there's no further questions, I respectfully request that the court affirm the judgment. Do you agree that the third and fourth prongs would be met if we found the first two prongs in the defendant's favor? I would agree with that, yes. But under Ponce Flores, as we cited in our brief, we do not believe the first two prongs are met. Therefore, we need to go no further, which is why we didn't brief them. Okay. Thank you, counsel. Thank you. Any rebuttal? Yes, Your Honor. In response to the government's argument that we're tied to the indictment and the date admitted there, I think, once again, we just have to go back to the fundamental point that the law sets out in this court's decision when the offense of illegal reentry was committed. And we are talking about a sentencing factor here. We are not talking about whether he pled guilty or not in an incorrect fashion. We're talking about what are the facts established for sentencing. The facts established in the PSR itself is July 24, 2017. Applying the facts there and the law that this court has already decided over 20 years ago, that's the date he was found in. The date that he admitted to in his plea had a legal significance that was not taken into account with regard to the sentencing at that point. It would have been better, of course, if someone had objected, but it wasn't necessary at the time because it still falls within an honor. It's not necessary in terms of plain error. Not when established, Your Honor, in the PSR itself. If the PSR hadn't set out so clearly. It's got to be clear and unmistakable to the district court in order to commit a plain error. And that should have been the case as soon as the PSR was read because the PSR, looking just to this court's 20-year history of case law, established that fact. I also want to get to the issue of the admission about what the limited thing, admittedly very limited thing that the defendant's attorney said there. He said that when this defendant was arrested, the marijuana wasn't on him, it was near him. That was clear from the PSR anyway. What he added was that admission that he had gathered together with a group of people because he didn't have the money to come into the United States and had come across with a group of people carrying marijuana. That's what the crux of what he admitted was. And under this court's case law in a case called Chavez-Hernandez from 2012, this court used a very similar admission. In that case, it was the age of a victim in a prior case. Just call that an evidentiary admission and say that is a fact that the district court can rely on. It's a fact here in this case, too. It's what he admitted to at the time. The government relied heavily on, I think it was Urana's case that they say is sort of the flip situation. Right. What's your response on that? I think that there again, the problem that the government has is that in both of those cases, the defendant was trying to take advantage of the idea that illegal reentry is a continuing offense, starting when he reenters, ending when he's found. In both Urana and in that Vargas-Garcia case, the defendant was trying to say, I've been here all this time, and so what I did at the very end when I was found, that's relevant conduct. So that's the exact opposite of what we're saying here. We're saying it's the exact conduct when he actually first committed the illegal reentry offense. It's that tying together. So that's what the government's missing. We're not doing what Urana was doing. We're not doing what Vargas was doing. We're not trying to say wait until we're found some months later or in some place later and then tie it all together and give us carte blanche because we're looking at same day, same time, same place, same set of actions all done together, and that's why it's like Henry. I would say that Henry is a case where the government, to prove his federal offense, was not required to prove the trespass. There's no evidence that he used the gun to commit the trespass. The gun was found in the house where he had committed the trespass, and the person holding the gun was the victim who was found by police holding her own gun, and his gun, the man's gun who was later charged, was found somewhere in the house, and she said that gun was his. So it's not the case that he had to somehow be tied to that gun in that format. Finally, the Eighth Circuit. It is true that other courts like the Eighth Circuit have looked to a number of different factors, but this court hasn't done that in the cases that we've cited to the court. It's temporal proximity, spatial, same societal harm. Those other factors predate the focus on relevant conduct by reason of the commission's amendment to the guidelines. There's no reason for them to be carried over now in terms of factors that the court should consider because they go against the very breadth of the relevant conduct regime that was brought in in that 1993 amendment. And speaking of consequences, if the court were to adopt that as a set of factors, any drug case, any fraud case, if from now on the defendant is going to be able to say, you didn't rely on that other fraud to prove up my federal case, you didn't rely on those other drugs to charge me in this federal case so it can't be relevant conduct, that would be a very strong narrowing of 1B1.3. That's not what I think the court is anticipating doing, and that's why those factors should not be brought in now. All right. Thank you to both sides. Thank you. Let's keep in mind the release dating and try to get an opinion out as promptly as we can. Thank you.